HARRELL AND SUMNER CONTRACTING COMPANY, INC. (a Georgia Corporation), Plaintiff,

v.

PEABODY PETERSEN CO., an Illinois Corp. et al., Defendants.

PEABODY PETERSEN CO., Defendant and Third-party Plaintiff,

v.

EVANS CONSTRUCTION COMPANY, a division of Moore Pipe and Springler Co., a corp. and St. Paul Fire and Marine Insurance Company, etc., Third-party Defendants.

No. 73–24–CIV–M.

United States District Court, N. D. Florida, Marianna Division.

May 13, 1976.

Kunes & Kunes, Tifton, Ga., Robert J. Ritter, Miami, Fla., for plaintiff.

Lawrence M. Watson, Jr., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P. A., Orlando, Fla., for defendant and third-party plaintiff Peabody.

Dewey R. Villareal, Jr., John J. McLaughlin, Tampa, Fla., for defendant Orofino.

Cecil G. Costin, Jr., Port St. Joe, Fla., for Federal Ins. Co. and Peabody Petersen.

Lynn C. Higby, Isler, Higby, Brown & Smoak, Panama City, Fla., for St. Joe Paper Co.

Benjamin W. Redding, Panama City, Fla., for Sverdrup & Parcel Assoc., Inc., and Register & Cummings Engineers, Inc.

Robert J. Kelly, Tallahassee, Fla., for Evans Const. Co. and St. Paul Fire and Marine Ins. Co., third-party defendants.

William J. Rish, Port St. Joe, Fla., for City of Port St. Joe.

### ORDER GRANTING MOTION TO DISMISS

STAFFORD, District Judge.

On November 20, 1974, this court ruled that diversity jurisdiction over the present action had been properly invoked. Lack of subject matter jurisdiction, however, can be raised at any time. Rule 12(h)(2), (3), Fed.R.Civ.P. The vehicle for re-examination of this court's subject matter jurisdiction is the motion of Sverdrup and Parcel Associates filed January 6, 1975. In its order of March 8, 1976, the court requested the parties to re-brief this crucial issue. Briefs were received, hearing on the motion was heard in Marianna on March 16, and supplemental briefs were submitted. After careful study of all briefs and examination of the applicable case and statutory authorities, the court is compelled to reverse its earlier ruling and to conclude that it lacks jurisdiction in the instant cause.

The pertinent facts are these. In 1972, the City of Port St. Joe (City) entered a contract with Peabody Petersen Co. (Peabody) for the construction of a wastewater treatment plant at Port St. Joe, Florida. Peabody is an Illinois contractor with its principal place of business in Orlando, Florida. Peabody subcontracted with Harrell and Sumner Contracting Company, Inc. (Harrell) and Tackett Construction Company, Inc. (Tackett) as joint venturers to perform excavation work on the wastewater treatment plant. Harrell is a Georgia corporation; Tackett is a Florida corporation.

Harrell and Tackett allegedly were required to perform extra work on the project for which they were not compensated. This gave rise to an unliquidated claim by Harrell and Tackett against City, Peabody and the engineers (Sverdrup and Parcel Associates, Inc.) whose predecessors in interest had provided the plans and specifications for the project. On July 6, 1973, Tackett assigned all its interest in the claim to Harrell "in consideration of one-half of the net proceeds of any recovery, after payment of attorneys fees and costs" which were to be footed entirely by Harrell during the litigation. Thereafter Harrell brought suit in this court.

Harrell being a Georgia corporation and the defendants being citizens of other states, diversity appears at first blush to be complete. See 28 U.S.C. § 1332. That diversity and the jurisdiction of this court would be destroyed, however, by the joinder of Tackett, whose interests would require its alignment with Harrell as a party plaintiff. It is the position of Sverdrup and Parcel that Tackett is a real party in interest to this lawsuit and that the sole purpose of the assignment from Tackett to Harrell was to create federal diversity jurisdiction in violation of 28 U.S.C. § 1359. Harrell's position is that while the assignment may have created diversity jurisdiction, this was merely an "incidental" result, so that the assignment withstands judicial scrutiny under 28 U.S.C. § 1359. Peabody (a co-defendant who nevertheless joins plaintiff

Harrell in striving to keep this case in federal court) has adopted yet a third position. The Tackett assignment, Peabody urges, is not really crucial to the jurisdictional analysis in this case, since the court would have jurisdiction of Harrell's claim even if the assignment had never been made.

The crucial issues, as the court views this case, are these: (1) Would this court have had jurisdiction over the cause absent the assignment, and (2), if not, must the case be dismissed because the Tackett assignment was improperly or collusively made to invoke the jurisdiction of this court?

As to the first of these issues, it must be noted at the outset that Tackett and Harrell were joint venturers.[1] The threshold question is whether Tackett, in the absence of an assignment, would have been an indispensable party to a suit by his co-venturer Harrell in the sense that his joinder would have been required even though diversity would thereby have been destroyed. See Rule 19(b), Fed.R.Civ.P.

The general rule governing joinder of joint venturers is well expressed in 59 Am. Jur.2d *Parties*, § 103, at 505, 506:

> At common law the joinder of parties plaintiff is confined to those having a joint interest in the subject of suit, and joinder of plaintiffs is compulsory where the parties, under the substantive law, are possessed of joint rights. The requirement of joinder of all those jointly interested is also the rule under most statutory provisions. It is the general requirement not only of the common law but of the modern practice statutes and rules of practice as well that a personal action must be joined in by all persons, as plaintiffs, who have a joint interest or

are entitled jointly or in common to the right sued upon. This is true whether the action is one ex contractu or one ex delicto, and it is immaterial, when several persons are shown to be jointly interested, in what proportions they may be concerned, or whether they have suffered injury or damages to the same extent. [Footnotes omitted]

With few exceptions, federal courts have recognized the indispensability (as opposed to the mere necessity) of a joint venturer to a suit by a co-venturer. See *Purcel v. Wells,* 236 F.2d 469 (10th Cir. 1956); *Archer-Daniels-Midland Co. v. Paull,* 188 F.Supp. 277 (W.D.Ark.1960). *Cf. Bry-Man's, Inc. v. Stute,* 312 F.2d 585 (5 Cir. 1963).

■■ It is recognized that these decisions are not necessarily binding in the instant situation. Rule 19(b), which was revised in 1966, permits the court to consider the question of indispensability on a case-by-case basis, taking into account such factors as prejudice and the adequacy of a remedy if the action is dismissed for nonjoinder. See generally 7 Wright & Miller, *Federal Practice and Procedure,* § 1613, at 127. The instant action was originally brought in seven counts, specifically negligence, quantum meruit, fraud, action on subcontract, action on general contract, and action on contract against all defendants. If Tackett were not considered an indispensable party to the federal action, nothing would preclude it from suing in state court on one or more of these theories, with the resultant possibility of multiple and inconsistent verdicts.[2] Thus, on the basis of the first consideration in Rule 19(b) alone, it is evident that Tackett, in the absence of an assignment, would be considered an indis-

---

1. At the March 16 hearing, counsel for Peabody first advanced the argument that Harrell and Tackett were joint *and several* obligees who accordingly might sue the defendants separately. See, e. g., *Construction Mgt. Corp. v. Brown & Root, Inc.,* 35 Misc.2d 223, 229 N.Y. S.2d 70 (S.Ct.1962). However, the only evidence produced in support of this contention was two checks made out solely to Tackett. Peabody has not met its burden of showing that Harrell and Tackett were joint and several

obligees. See *Green v. Hale,* 433 F.2d 324, 329 (5 Cir. 1970).

2. Peabody asserts that, as a practical matter, Tackett would not sue in state court since it is insolvent and unable to pursue any claim it might have. Given the size of the claim at stake, however, it is doubtful that Harrell would sit by and permit a claim by Tackett (which would inure to the benefit of both venturers) to go unlitigated for want of funds. Harrell has already demonstrated its willing-

pensable party whose presence would destroy diversity and mandate the dismissal of this action for want of jurisdiction.[3]

█ This leads to the second issue posed earlier: since this court would not have had jurisdiction over this action absent the Tackett assignment, will that document pass judicial scrutiny under 28 U.S.C. § 1359, thereby enabling this court to retain jurisdiction? The court is of the view that it will not. The assignment itself is self-contradictory in the sense that it provides for the "absolute" assignment of Tackett's interests but then proceeds to recite that Tackett shall retain a 50% interest in the proceeds of any lawsuit after deduction of costs and attorneys fees. Since Tackett and Harrell would have split the proceeds and costs even in the absence of an assignment, its purpose can only have been to make Harrell the sole representative of both Tackett and Harrell in this lawsuit. The affidavit of De Forest Tackett, President of Tackett Construction Co., Inc., expressly states that

. . . the assignment was made for the purpose of protecting "Harrell's" right to control said litigation and to insure that "Harrell" would be the real party at interest in said litigation and could control said litigation to its ultimate end. . . .

Had the Tackett assignment been truly "absolute," with Tackett retaining no·interest whatsoever, then Harrell might certainly have prosecuted the present action in this court. See *Kramer v. Caribbean Mills,* 394 U.S. 823, n.9, 89 S.Ct. 1487, at 1490, 23 L.Ed.2d 9 (1969). Such, however, is not the case.

Harrell and Peabody place considerable emphasis on the fact that Harrell, as assignee, had a legitimate interest in the claim against City et al. prior to the assignment. Though lack of such a prior interest on the part of Harrell would certainly defeat diversity jurisdiction, it does not follow that the presence of such an interest can confer jurisdiction. Rather, the inquiry should be, in view of the strong policy limiting federal jurisdiction, whether Harrell has established "a legitimate commercial reason for the [assignment] independent of a desire to litigate in a federal court." 14 Wright & Miller, *Federal Practice and Procedure,* § 3639, at 98–99.

The sole reasons the court can discern for the subject assignment are legal and tactical rather than commercial in nature. Thus, Tackett avoids the necessity of fronting costs and attorneys fees, which it claims it cannot afford; this can hardly be viewed as a legitimate commercial reason, however, since Harrell might as easily have agreed to front costs and attorneys fees if Tackett had joined in the lawsuit. By assigning its interest in the unliquidated claim to Harrell, Tackett also avoids the discovery rules applied to parties plaintiff and defendant; again, however, this tactical advantage is not to be equated with an independent commercial reason, the presence of which would overcome the "incidental" side-effect of creating federal diversity jurisdiction.

In the final analysis, the subject assignment simply permits Tackett to have its interests litigated without actually joining in the lawsuit to which it would otherwise be an indispensable party. There is nothing inherently wrong in this arrangement.

---

ness to "front" costs and expenses for Tackett in the instant suit. Also without merit is Peabody's assertion that Tackett and Harrell might have sued separately in quantum meruit without the possibility of inconsistent verdicts. While Peabody's arguments in this regard are innovative, they are also speculative. The fact is that the instant suit was not brought on quantum meruit alone, but on six other theories as well. In the absence of the Tackett assignment, the non-joinder of that party in the present action would have presented a strong

likelihood of prejudice to the city and the engineers.

3. Further supporting this result is the availability of an adequate remedy in state court, another factor mentioned in Rule 19(b). Peabody and Harrell candidly admitted at the March 16 hearing that their basic rationale for proceeding in federal court was to avoid the alleged prejudice that a local jury would have for non-local parties. This consideration alone, however, does not render the remedy in state court "inadequate."

Congress has decreed, however, that such an absentee litigant is to be denied a federal forum where his presence would destroy diversity jurisdiction. 28 U.S.C. § 1359. See *Kramer v. Caribbean Mills,* supra; *Miller & Lux v. East Side Canal & Irrigation Co.,* 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908); *Pritchard & Co. v. Dow Chemical,* 331 F.Supp. 1215 (W.D.Mo.1971).

It is recognized that this lawsuit has been pending for over two and one-half years in federal court. Counsel for the respective parties have been diligent in advocating their respective positions, the delay being partly the result of unavoidable circumstances.[4] Better to dismiss the action at this stage, however, than to permit the action to proceed to trial with the strong likelihood of dismissal on appeal for want of jurisdiction in the trial court.

For the foregoing reasons, it is ORDERED:

This action is hereby dismissed.

---

4. For ten months during the pendency of this case, the court sat without a trial judge in its Tallahassee division.